FILED

2018 MAR -9 PM 2:47

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ANGELA MORGAN,

     Plaintiff,

v.

                             CASE NO.: 6:18-CV-368-ORL-41-DCI

NATIONAL BANK OF COMMERCE,

     Defendant.

_____/

### COMPLAINT

1.     Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.     The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC), in 2016 this number was 3,401,614 and in 2017 it was 4,501,967.[1]

3.     National Bank of Commerce, the Defendant, texted the Plaintiff, Ms. Angela Morgan, a mindboggling 500 times although she was never a customer, never gave them permission to text her, and begged repeatedly for texts to stop.

4.     National Bank of Commerce has a corporate policy to robocall people thousands of times.

5.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years.

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6.      Plaintiff, Angela Morgan, alleges Defendant, National Bank of Commerce texted her more than 500 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIED").

7.      Robocalls and texts are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp., 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8.      The TCPA was enacted to prevent companies like National Bank of Commerce from invading American citizens' privacy and prevent illegal robocalls.

9.      Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

## FACTUAL ALLEGATIONS

12.     Plaintiff is a natural person and citizen of the State of FL, she resided in Orlando, FL and now in Athens, TN.

13.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

14.     Plaintiff is the "called party." See Breslow v. Wells Fargo Bank, N.A., 755 F. 3d 1265 (11th Cir. 2014); Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

15.     Defendant is a Company with its principal place of business in Birmingham, Alabama, and conducts business in the State of Florida.

16.     Plaintiff is the regular user and carrier of the cellular telephone number at issue, (407) 223-2301.

17.     Plaintiff was the "texted party" during each text subject to this lawsuit.

3

18.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

19.     Defendant did not have the "express consent" of the Defendant to text her cell phone.

20.     "Express consent" is narrowly construed by the Courts.

21.     It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

22.     It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiff on her cell phone using an ATDS for each account they were texting on.

23.     Defendant was put on notice Plaintiff did not want the Defendant contacting her.

24.     Defendant was told repeatedly that Plaintiff's is not the owner of the account and to stop texting.[2]

25.     Defendant did not have the express consent of the Plaintiff to text her on the accounts they texted her on.

26.     Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone texts to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

27.     Defendant sent at least one text to (407) 223-2301.

28.     Defendant sent at least one text to (407) 223-2301 using an ATDS.

29.     Defendant sent at least ten (10) texts to (407) 223-2301.

---

[2] Defendant should have the call logs showing the exact number of texts and the recordings which should illustrate exactly what was communicated to the Defendant.

30.   Defendant sent at least ten (10) texts to (407) 223-2301 using an ATDS.

31.   Defendant sent at least one hundred (100) texts to (407) 223-2301.

32.   Defendant sent at least one hundred (100) texts to (407) 223-2301 using an ATDS.

33.   Defendant sent at least three hundred (300) texts to (407) 223-2301.

34.   Defendant sent at least three hundred (300) texts to (407) 223-2301 using an ATDS.

35.   Defendant sent at least five hundred (500) texts to (407) 223-2301.

36.   Defendant sent at least five hundred (500) texts to (407) 223-2301 using an ATDS.

37.   Each text the Defendant sent to (407) 223-2301 in the last four years was made using an ATDS.

38.   Each text the Defendant sent to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

39.   Each text the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be texted, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

40.   Plaintiff repeatedly requested the Defendant to stop texting her cell phone, however, the Defendant continued to send texts.

41.   Plaintiff contacted the Defendant to request the texts to stop because she was not the owner of the account. The Defendant said they couldn't remove her phone number from the account because she was not the account holder.

42.   Plaintiff's conversations with the Defendant putting them on notice that they did not want more phone texts were ignored.

43.    Defendant sent texts to the Plaintiff as late as 10:35 p.m. and as early as 4:43 a.m. on several occasions.[3]

44.    Defendant has records of the texts to the Plaintiff.

45.    Defendant has recorded numerous conversations with the Plaintiff.

46.    Defendant has made approximately five hundred (500) texts to Plaintiff's aforementioned cellular telephone number since in or about October of 2016 which will be established exactly once Defendant turns over their dialer records.

47.    Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive texts.

48.    By effectuating these unlawful phone texts, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

49.    Defendant's aggravating and annoying phone texts trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

50.    Defendant's phone texts harmed Plaintiff by wasting her time.

51.    Moreover, "wireless customers [like Plaintiff] are charged for incoming texts whether they pay in advance or after the texts are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone texts harmed Plaintiff by depleting the battery life on her cellular telephone, and by using number of texts allocated to Plaintiff by her cellular telephone service provider.

---

[3] Please refer to Exhibit A

6

52.     Defendant's corporate policy and procedures are structured as to continue to text individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

53.     Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

54.     Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone texts to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the texts. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

55.     Defendant never had the Plaintiff's expressed consent for placement of telephone texts to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

56.     None of Defendant's telephone texts placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

57.     Defendant violated the TCPA with respect to the Plaintiff.

58.     Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

**COUNT I**
**(Violation of the TCPA)**

59.     Plaintiff incorporates Paragraphs one (1) through fifty-eight (58).

60.     Defendant willfully violated the TCPA with respect to the Plaintiff each time they texted the Plaintiff after she revoked her consent to be texted by them using an ATDS or pre-recorded voice.

61.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed texts made to Plaintiff's cellular telephone after Plaintiff revoked her consent to be texted by them using an ATDS or pre-recorded voice.

62.     Defendant, National Bank of Commerce repeatedly placed non-emergency telephone texts to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

63.     As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

64.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, National Bank of Commerce, from violating the TCPA in the future.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

<u>**COUNT IV**</u>
**(Invasion of Privacy – Intrusion Upon Seclusion)**

65.     Plaintiff incorporates Paragraphs one (1) through sixty-four (64).

66.     Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

67.     All of the texts made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

8

68.     Defendant's persistent autodialed texts to her cellular phone eliminated Plaintiff's right to be left alone.

69.     Defendant's autodialed texts disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

70.     These persistent autodialed texts eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

71.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

72.     Defendant's harassing conduct and tactic of repeatedly autodialing Plaintiff to her cellular after requests to stop is highly offensive to a reasonable person.

73.     Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

74.     As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT V
### (Intentional Infliction of Emotional Distress)

75.     Plaintiff incorporates Paragraph one (1) through seventy-four (74).

76.     The harassing and abusive conduct, including the repetitive texts to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

77.     It is beyond the pale of decency to text anybody 500 times.

9

78.     The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because she could not stop the texts despite explaining over and over that she was not the owner of the account they texted about.

79.     To text somebody this amount of time is inhumane.

80.     It is utterly uncivilized to text someone 500 times.

81.     If a person texted another person 500 times, the caller would most likely be in prison for criminal harassment.

82.     This is especially true if the caller continued to make the texts after being told to stop and never had permission to text in the first place.

83.     The texts to Plaintiff by Defendant are harassing, aggravating and highly intrusive.

**WHEREFORE,**  Plaintiff respectfully requests that judgment be entered against Defendant for punitive damages and such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

s/ William Peerce Howard
William Peerce Howard, Esquire
Florida Bar No.: 0103330
The Consumer Protection Firm
4030 Henderson Blvd.
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Billy@TheConsumerProtectionFirm.com
BillBowles@TheConsumerProtectionFirm.com
Attorney for Plaintiff